UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**CHRISTOPHER ANDY FRANCOIS**                     **CIVIL ACTION**

**VERSUS**                                         **NO:    08-3485**

**SGT. WILLIAM RIGDON, ET. AL**                   **SECTION: "A" (4)**

## REPORT AND RECOMMENDATION

Before the Court is a **Motion For Summary Judgment (Rec. Doc. No. 45)** filed by the Defendants, Master Sgt. Mickey Dillion, Sgt. Cory Jackson, Lt. John Knight, Lt. Kevin Luper, Master Sgt. Patrick Martin, Lt. Wade Rigdon, Sgt. William Rigdon, Master Sgt. James Seal and Capt. Jeff Williams.[1] Defendants contend that the Plaintiff, Christopher Andy Francois's claims should be dismissed for failure to exhaust available administrative remedies as required by 42 U.S.C. § 1997e. This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an Evidentiary Hearing, if necessary, and to submit Proposed Findings, Conclusions, and Recommendations for disposition pursuant to **28 U.S.C. § 636(1)(B)** and **(C)**, and as applicable, **42 U.S.C. § 1983**. Upon review of the entire record, the Court has determined that this matter can be disposed of without conducting an evidentiary hearing.

---

[1] Three other persons, Sgt. Colter Brumfield, Sgt. Melissa Hendrick, and Sgt. Stakes were also named as defendants. However, Stakes was voluntarily dismissed as a party defendant (Rec. Doc. Nos. 26, 30, 35), and Brumfield and Hendrick were never served.

## I. Factual Background

### A. Claims

This action, filed by Christopher Andy Francois ("Francois"), an inmate presently incarcerated in Rayburn Correctional Center ("Rayburn"), arises from a clash between Francois and fellow inmate Danny Trotter. Francois alleges that he was ordered to stop fighting and to exit his cell. He alleges that he complied with the order. However, he claims that, despite his compliance, Sgt. Rigdon snatched him and slammed him against the plexiglass across the hall in front of his cell. Sgt. Rigdon and Sgt. Brumfield allegedly yelled at him to stop resisting. Francois complains that they manhandled him while he was compliant and silent. He complains that he was then handcuffed by Sgt. Brumfield and escorted off into the Sun Unit main lobby off the tier.

Francois then met Lt. Luper who was allegedly under the impression that he was resisting. Lt. Luper therefore ordered the officers to place Francois on his knees. Francois complains that he was placed facing the wall and then Sgt. Rigdon started to slam him against the wall multiple times, causing his front left tooth to chip; causing a hole in his gold tooth; and injuring his nose and head. Francois points out that, at the time Sgt. Rigdon slammed his face into the wall, he was handcuffed and shackled.

Francois complains that when Sgt. Rigdon stopped hitting him, Lt. Rigdon, Lt. Luper, Lt. Knight, and Sgt. Brumfield commenced punching and kicking him. According to Francois, this beating lasted a little longer than a minute. Capt. Williams, Master Sgt. Dillion, Master Sergeant Martin, Master Sergeant Seal, Sgt. Stakes, Sgt. Jackson, and Sgt. Hendrick observed the beating, but did nothing to stop it. Francois complains that the officers destroyed one-third of his property, including: his addresses, telephone numbers, legal books, and other documents. He further

complains that he did not receive sufficient medical care and further that the medical staff failed to document his injuries.

As a result of the above, Francois seeks to have this Court order his transfer to another institution. He also seeks an award of compensatory damages; reimbursement of medical costs associated with the care provided to him for his physical injuries; nominal damages for subjecting him to cruel and unusual punishment in the form of the beating; punitive damages; and other damages as appropriate.

In response to the Complaint filed by Francois, the Defendants filed the subject Motion for Summary Judgment, contending that the instant Complaint should be dismissed because Francois failed to exhaust available administrative remedies. (Rec. Doc. No. 45). In response to the motion, Francois submitted several documents addressing the administrative procedure process, which will be further explained herein.

**B.** *Spears* **Hearing**

Francois testified that he is presently incarcerated and is serving ten years for pleading guilty to armed robbery. He stated that he was in a fight in his cell with another inmate. He also stated that Sgt. Rigdon came to the cell and told him to stop fighting. He further stated that he was not fighting at the time, because he had already knocked the other inmate out and the other inmate was laying unconscious on the floor. He also testified that he complied with the sergeant's request to come out of the cell. Francois stated that Sgt. Rigdon slammed him up against the plexiglass wall and told him to stop resisting. He claimed that Sgt. Brumfield arrived, and the two of them continued to rough him up. He was then placed in handcuffs and escorted off of the tier.

Francois indicated that Lt. Luper ordered the two sergeants to place him on his knees against

the wall near the disciplinary hearing room and to shackle his ankles.  He stated that, while he was on his knees, Sgt. Rigdon told him to face the wall.  He said that he apparently meant for him to put his face up against the wall.  To demonstrate, Sgt. Rigdon slammed Francois' face into the wall, which chipped his tooth, left a mark on his head, and injured his nose.

With this, Sgt. Brumfield and Lts. Luper, Rigdon, and Knight, joined in the beating.  As a result of the incident, Francois claims that he suffered back injuries, bruises, cuts, bruised ribs, and a swollen leg.

Francois further testified that he was charged with a disciplinary violation for the fight with a fellow inmate, even though the other inmate caused his injuries.  Francois also indicated that he had another disciplinary charge placed against him for failure to cooperate in the investigation arising from the altercation with Sgt. Rigdon outside of his cell.  He was found guilty and placed in disciplinary confinement.

Francois also stated that he named Capt. Williams and Master Sgts. Patrick, Dillion, and Seal as Defendants, because they were supervisory officials who were present at the scene and did not intervene in the beating or take corrective actions against the officers who beat him.  He also named Sgt. Jackson as a Defendant, because he was on the tier during the fight and the events following when Sgts. Rigdon and Brumfield beat him outside of the cell.

Francois also claimed that, after he was sent to disciplinary confinement, his personal items in his cell, which included a Georgetown Law Journal and other papers, motions, citations, and briefs related to his criminal case, were thrown away.  He stated that he did not intend to raise this as a real issue in the case and instead wished only to pursue the excessive force issue.

In addition, he claimed that his medical records did not properly document the extent of his

4

injuries after the beatings. He suggested to the Court that this was inadequate medical care. However, Francois conceded that the nurse evaluated him after the beating and treated the injuries. She also referred him for dental care.

## II. Standard of Review

### A. Summary Judgment

Summary judgment is proper if the evidence shows the existence of no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P.56(c). The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). A party is entitled to summary judgment only if the pleadings, depositions, answers to interrogatories, admissions and affidavits before the Court show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Fields v. City of Southern Houston*, 922 F.2d1187 (5th Cir. 1991).

Once the moving party carries its burden of proving that there is no material factual dispute, the burden shifts to the nonmovant "to show that summary judgment should not lie." *Hopper v. Frank*, 16 F.3d 92, 96 (5th Cir. 1994). While the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmovant, the nonmnoving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. Ltd. v.. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). This requires the nonmoving party to do " more than simply show that there is some metaphysical doubt as to the material facts." *See id.*

The nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. If the record taken as a whole could not lead a trier of fact to find for the nonmoving party, there is no genuine issue for trial. *See Szabo v. Errisson*, 68 F. 3d 940, 942 ( 5th Cir. 1995)*; Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1085 (5th Cir. 1994).

B.     **Exhaustion of Available Administrative Remedies**

A prisoner must exhaust all available administrative remedies before bringing an action in federal court regarding prison conditions. The Prison Litigation Reform Act ("PLRA") provides that:

> No action shall be brought with respect to prison conditions under § 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*See* 42 U.S.C. § 1997e.

The United States Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The United States Supreme Court has further held that "an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner,* 532 U.S. 731, 741 n. 6 (2001).

In Rayburn, a correctional facility under the authority of the Louisiana Department of Public Safety and Corrections, a two-step administrative remedy procedure is in place. At the first step, an inmate submits his grievance to the warden within ninety days of the incident giving rise to the

complaint. The warden generally has forty days in which to respond. If the warden fails to respond, or if the inmate is dissatisfied with the warden's response, the inmate may proceed to the second step by requesting review of the matter by the Secretary of the Louisiana Department of Public Safety and Corrections. The Secretary generally has forty-five days in which to respond. La. Admin. Code tit. 22, pt. I, § 325.

**III.   Analysis**

The following facts are undisputed. Francois filed a grievance, ARP No. RCC 2007-503, regarding the incident at issue.[2] Francois withdrew his grievance before any decisions were rendered on the matter by prison officials.[3] Shortly thereafter, Francois filed another grievance, ARP No. RCC 2007-508, involving the same subject matter as his withdrawn grievance.[4] A first-step response was issued rejecting ARP No. RCC 2007-508 as repetitive.[5] Francois never proceeded to the second step of the review process by appealing the warden's rejection of ARP No. RCC 2007-508 as repetitive.

Defendants argue that Francois, by virtue of his failure to proceed to the second-step of the administrative process in connection with ARP No. RCC 2007-508, failed to exhaust his administrative remedies. Francois, in response, argues that the rejection of ARP No. RCC 2007-508

---

[2] A copy of the pertinent grievance is attached to the Defendants' Motion for Summary Judgment (Rec. Doc. No. 45).

[3] Francois wrote a letter to prison officials requesting that "the A.R.P. filed on Oct. 31, 2007 be dismissed." A copy of Francois' letter is attached to the Defendants' Motion for Summary Judgment. (Rec. Doc. No. 45).

[4] A copy of ARP No. RCC 2007-508 is attached to the Defendants' Motion for Summary Judgment. (Rec. Doc. No. 45).

[5] While the first-step response, dated November 6, 2007, simply advises that ARP No. RCC 2007-508 is rejected, in correspondence dated November 13, 2007 from ARP Officer Susan Ratliff, Francois was advised that ARP No. RCC 2007-508 was rejected "because it is repetitious to RCC-2007-503." A copy of the first-step response, along with the November 13, 2007 communication, is attached to the Defendants' Motion for Summary Judgment. (Rec. Doc. No. 45).

as repetitive constituted a rejection of his second grievance in connection with the incident at issue. As such, the first step rejection "finalized" his administrative remedy procedure, relieving him "from proceeding in,to the institutional grievance system [sic] second step".[6] Stated differently, Francois contends that, because ARP No. RCC 2007-508 constituted his second grievance regarding the incident at issue, he exhausted Rayburn's two-step grievance process.

In rare situations where inmates, through no lack of diligence on their part, have genuinely been precluded from completing the applicable administrative grievance procedure, courts have waived the exhaustion requirement or excused the inmate from having to satisfy the requirement. In *Crawford v. Dretke*, No. C-04-335, 2007 WL 172628, *5-8 (S.D. Tex. Jan. 11, 2007), and *Days v. Johnson*, 322 F.3d 863, 866-867 (5th Cir. 2003) (*per curiam*), the prison grievance procedure at issue provided that an inmate could not proceed to the final step in the procedure if his initial grievance was returned as untimely. Because the inmates' first step grievance forms, in both *Crawford* and *Days*, had been returned unprocessed by prison officials based upon their untimeliness, the respective courts determined that the plaintiffs had exhausted the administrative remedies available to them.

In contrast to the above-cited cases, Francois was not precluded by any prison policy from exhausting his administrative remedies by appealing the warden's rejection of his grievance as repetitive. Francois, however, rather than exhausting his administrative remedies, proceeded to federal court, thereby depriving prison officials of the opportunity to correct a potential error in denying a grievance as repetitive when no earlier decision regarding the incident had been rendered. The squandering of such an opportunity is exactly what the exhaustion requirement was designed

---

[6]Rec. doc. 48, p. 1.

to prevent and, as such, should not be excused. As Magistrate Judge Knowles, in *Walker v. Seal*, No. 06-1300, 2007 WL 1169364, *3 (E.D. La. Apr. 19, 2007), observed:

> [P]laintiff essentially argues that it would be inequitable to hold him to the requirements of the applicable remedy procedure; however, it would likewise be unfair to require defendants to defend their actions before a jury when perhaps plaintiff's claims could have been resolved administratively. Plaintiff's decision to abandon the administrative procedure in the middle of the process and proceed to federal court is contrary to both the letter and intent of the law. The United States Supreme Court has noted:
>> Once within the discretion of the district court, exhaustion in cases covered by §1997e(a) is now mandatory. All "available" remedies must now be exhausted.... Beyond doubt, Congress enacted §1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might "filter out some frivolous claims." And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.
>
> *Porter v. Nussle,* 534 U.S. 516, 524-25 (2002) (citations omitted).

## IV. <u>Recommendation</u>

Accordingly,

It is hereby **RECOMMENDED** that the Defendants' **Motion for Summary Judgment (Rec. Doc. No. 45)** be **GRANTED** and the above-captioned action be **DISMISSED WITHOUT PREJUDICE** due to the Plaintiff Christopher Andy Francois's failure to exhaust his administrative remedies as required under the provisions of 42 U.S.C. §1997e(a).

A party's failure to file written objections to the Proposed Findings, Conclusions, and Recommendation in a Magistrate Judge's Report and Recommendation **within ten (10) days** after

being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the Unobjected-to Proposed Factual Findings and Legal Conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 3rd day of April, 2009.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**